UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BECKER CONTRACTOR SERVICES, INC.                                              PLAINTIFF

V.                                                         CIVIL ACTION NO. 3:23-CV-3034-DPJ-ASH

QUIKTRIP CORP. and CDI                                                       DEFENDANTS
CONTRACTORS, LLC

ORDER

This construction case between a general contractor and its subcontractor disputes who owes whom. Defendant QuikTrip Corporation hired Defendant CDI Contractors, LLC as its general contractor to build a service station. CDI then subcontracted with Plaintiff Becker Contractor Services, Inc. to construct storm drainage for the project. Becker and CDI both say the other breached their duties under that subcontract.

There are two pending summary-judgment motions: (1) a joint motion by Defendants QuikTrip and CDI [38] on Becker's claims against them and (2) CDI's motion [36] seeking judgment as to some counterclaims it asserted against Becker. As will be discussed, the Court grants Defendants' motion dismissing Becker's conversion claim and dismisses Becker's now-conceded misrepresentation claim. The Court denies everything else.

That said, it is a close call whether Defendants should also prevail on other claims or parts of other claims (i.e., specific disputed costs). But no matter how the Court rules on the other issues, the case would still proceed to trial because some of CDI's counterclaims are not disputed under Rule 56. In addition to those jury questions, Becker has claims that present fact questions. And because the borderline claims seem intermingled with ones that must be tried, it is more prudent to allow the case to proceed. As the Fifth Circuit has observed, "[e]ven if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it

believes that 'the better course would be to proceed to a full trial.'" *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

I.     Background

In March 2022, CDI requested bids for building a new QuikTrip gas station in Byram, Mississippi. Defs.' Mem. [39] at 1; P. Becker Aff. [42-1] ¶ 3. Becker offered to provide storm drains and utilities, and CDI accepted in April 2022. *Id.*; CDI email [38-2] at 1. But it took until September 2022 for Becker to sign the subcontract because it had trouble obtaining the insurance coverage that CDI required. Defs.' Mem. [39] at 2. Despite the time lag, Becker didn't ask for any inflation-based changes to its bid.

The problems continued after work began. In general, Becker says CDI refused to pay for extra-contractual work it instructed Becker to perform, while CDI says Becker failed to properly document its change order requests and started the extra work without receiving written approval as the subcontract required. There were other disputes too, but most issues relate to the change orders requests.

Becker eventually obtained a lien against Defendants on March 30, 2023, Lien [1-1] at 26, and a month later walked off the job taking key materials with it, P. Becker Aff. [42-1] ¶ 21. CDI believes this breached Becker's duty under the subcontract to proceed with work while the parties addressed pay disputes. Eventually Becker and CDI negotiated Becker's return to the site, and it completed its scope of work. But CDI withheld money Becker felt owed.[1]

---

[1] The parties have not yet adequately addressed the legal consequences of the negotiated return to work. For example, would it be considered a ratification? The Court has not examined the question and merely flags it as a potential issue moving forward.

In September 2023, Becker sued Defendants on various grounds including breach of contract. CDI removed [1] the case, joined [4] by QuikTrip. CDI also asserted counterclaims against Becker. Ans. and Counterclaims [7] at 13–17. Defendants based their removal on diversity jurisdiction under 28 U.S.C. § 1332, and the Court finds that subject-matter jurisdiction does exist. It therefore considers the pending motions.

II.     Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute about any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case[ ] and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).[2]

In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such

---

[2] Becker's response doesn't always comply with this rule. For example, it includes over 150 pages of business records but rarely cites to the particular parts of those records as Rule 56(c) requires. The Court is under no duty to search the record for evidence supporting a party's position. *Fuentes v. Postmaster Gen. of U.S. Postal Serv.*, 282 F. App'x 296, 300 (5th Cir. 2008).

3

contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). It must "interpret all facts and draw all reasonable inferences in favor of the nonmovant." *EEOC v. Rite Way Serv.*, 819 F.3d 235, 239 (5th Cir. 2016); *accord Tolan v. Cotton*, 572 U.S. 650, 660 (2014). But conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

III.  Discussion

This Order first considers the applicable law. It then addresses three claims that require individual treatment: (1) Becker's lien-based claim, (2) Becker's conversion claim, and (3) CDI's conversion claim. All other claims—including CDI's counterclaims against Becker—will be addressed collectively.

    A.  Applicable Law

To start, the Court considers which state's law applies. Both Becker and CDI bring claims under the subcontract, which elects Arkansas law. Subcontract [38-3] § 14.1. But they briefed both motions under Mississippi's substantive law, never mentioning the choice-of-law clause or any Arkansas law. Briefing a case under one state's laws without raising choice-of-law waives the issue. *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011). The Court accepts the parties' implicit agreement to apply Mississippi law.[3]

---

[3] The same goes for the subcontract's forum-selection clause, which places exclusive jurisdiction and venue in an Arkansas county. Subcontract [38-3] § 14.1; *see also SGIC Strategic Glob. Inv. Cap., Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 426 (5th Cir. 2016) (explaining waiver of forum); *Breal v. Downs L. Grp.*, 376 So. 3d 1221, 1225 (Miss. 2023) (holding party waived forum selection by litigating over a year in Mississippi).

B. Becker's Lien-Based Claim

Becker filed its construction lien against QuikTrip under Mississippi Code section 85-7-401 *et seq.* Lien [1-1] at 26. QuikTrip denies the lien's validity based on Becker's lack of "substantial compliance . . . with the . . . subcontract." Miss. Code Ann. § 85-7-405. So, as presented, whether Becker has an enforceable lien depends on whether it substantially complied with the subcontract.

The Mississippi Supreme Court has explained "substantial performance" of a construction contract:

> substantial performance is not literal, full or exact performance in every slight or unimportant detail, but performance of all important particulars; and . . . substantial performance exists where the building or structure as a whole is not impaired, where it can be used for its intended purpose after erection, where the defects can be remedied without any great expenditure and without material damage to other parts of the structure and may without injustice be compensated for by deductions from the contract price.

*Garner v. Hickman*, 733 So. 2d 191, 196 (Miss. 1999) (quoting *Bevis Constr. Co. v. Kittrell*, 139 So. 2d 375, 379 (Miss. 1962)).

Substantial performance is essentially the inverse of material breach: if the contract was substantially performed, there was no material breach. *See Measday v. Kwik-Kopy Corp.*, 713 F.2d 118, 124 (5th Cir. 1983) (citing J. Calamari and J. Perillo, *The Law of Contracts* § 11–14 (1977)). This definition fits with Mississippi law, under which a material breach means "a failure to perform a *substantial* part of the contract or one or more of its essential terms or conditions, or if there is such a breach as *substantially* defeats its purpose." *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 756 (Miss. 1987) (emphasis added) (quoting *Gulf S. Cap. Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966)).

The cases QuikTrip cites don't conflict with this definition. One involved a subcontractor that walked out and never returned, leaving the project "50–60% complete."

*Haden v. Krupp Asset Mgmt. Corp.*, 776 F. Supp. 1151, 1156 (S.D. Miss. 1990).  In another, the contractor terminated the contract, alleging default.  *Mergentime Corp. v. Wash. Metro. Area Transp. Auth.*, No. CIV. 89-1055, 2006 WL 416177, at *1 (D.D.C. Feb. 22, 2006).  Becker walked off but then returned and finished its contract.

CDI never terminated Becker despite the alleged delays and Becker's decision to walk off the job.  CDI instead negotiated Becker's return, and the work continued to completion.  It also remains a fact question whether the other issues between the parties were enough to say Becker failed to substantially comply as section 85-7-405(1)(a) requires.  So absent another argument from QuikTrip, the Court denies summary judgment on Count One of the Complaint.[4]

C.   Becker's Conversion Claim Against CDI

Becker says "CDI has exercised dominion and control over funds and converted funds by selling, transferring or using the funds without Becker's permission or consent and without accounting to Becker for the funds."  Compl. [1-1] ¶ 47.  CDI objects that a conversion action isn't usually available for deprivation of money.  Defs.' Mem. [39] at 19 (citing *Grand Biscayne 670, LLC v. 14510 Lemoyne Blvd., LLC*, 1:18-CV-357-HSO-JCG, 2019 WL 1714477, at *3 (S.D. Miss. Apr. 17, 2019)).

Under Mississippi law, "the tort of conversion cannot be used to recover a mere debt." *McGee v. Comprehensive Radiology Servs., PLLC*, 340 So. 3d 328, 330 (Miss. 2022).  Thus, "where there is no obligation *to return identical money*, but only a relationship of debtor and creditor, an action for conversion of the funds representing the indebtedness will not lie against the debtor."  *Id.* (emphasis in original) (quoting *Mossler Acceptance Co. v. Moore*, 67 So. 2d

---

[4] Even if QuikTrip met its burden under Rule 56, the lien issues overlap other issues that will proceed, so taking this one to trial is "the better course."  *Firman*, 684 F.3d at 538.

6

868, 873 (Miss. 1953)). That does not mean that money can never be converted. *Id.* Indeed, that happened in *McGee*, when one party collected money for the other and held it in an escrow account. *Id.* at 334. The conversion claim prevailed because the money "was easily identifiable." *Id.* (affirming judgment).

Becker argues that while "all unpaid amounts submitted to CDI for Additional Work were converted by CDI, one category of unpaid funds was unquestionably 'earmarked' for payment to Becker: retainage." Pl.'s Mem. [42] at 12. It offers neither legal authority nor record evidence that support this position.

Starting with the suggestion that CDI converted all unpaid amounts, those were "mere debts," and Becker doesn't argue otherwise. *McGee*, 340 So. 3d at 330. As for the retainage, it's hypothetically possible that such obligations could—with appropriate facts—support a conversion claim. That could be true if, for example, the money was somehow "identifiable" and a party had to return the "identical funds." *Id.* But Becker offers no record evidence explaining how the funds were collected or held. So unlike *McGee*, there is no cited evidence showing that the funds were anything but a "mere debt." *Id.*

The same thing happened in *Vercon Construction, Inc. v. Highland Mortgage. Co.*, No. 3:03-1370, 2005 WL 6158875, at *4 (D.S.C. July 21, 2005), *aff'd*, 187 F. App'x 264 (4th Cir. 2006). There, the court granted summary judgment on a conversion claim related to retainage because the retainage in that construction contract "[was] not an identifiable or separate item." *Id.* (citation and quotation marks omitted); *see also U. S. Fid. & Guar. Co. v. Bass*, 619 F.2d 1057, 1061 (5th Cir. 1980) (holding under Alabama law that funds "merely credited to a particular retainage account" could not be subject of conversion because there was "no obligation to return the identical money, but only a relationship of debtor or creditor") (citation

7

omitted). Without any legal authority or record evidence supporting Becker's position, summary judgment is granted on this claim.

> D. CDI's Conversion Claim

CDI claims that Becker converted specialized "trench drain" piping called "Hydroblock." *See* CDI Mem. [37] at 3. Under the subcontract, CDI paid Becker $44,000 to procure the Hydroblock, but by the time Becker signed the subcontract, the price had risen to over $61,000. Becker says it sent the $44,000 to the vendor, but the vendor applied the money to other purchases Becker made for other projects and then demanded full payment at the new price. P. Becker Aff. [42-1] ¶¶ 16, 24–26. According to Becker, it lacked resources to make that payment because CDI refused to pay for other work, so Becker walked off the job and took the Hydroblock with it. *Id.* ¶¶ 16–21. Becker eventually returned the Hydroblock and completed the work after reaching a new deal with CDI. *Id.* ¶¶ 25–28. But CDI claims that Becker had no right to take the Hydroblock in the first place.

"To make out a conversion, there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner's right, or of an unauthorized and injurious use, or of a wrongful detention after demand." *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998) (quoting *Miss. Motor Fin., Inc. v. Thomas*, 149 So. 2d 20, 23 (Miss. 1963)). There is no dispute Becker took the Hydroblock, even if temporarily. But CDI seems to acknowledge that it did not own the materials. The question therefore is whether CDI must show that it did.

Becker says it must because "[i]t is elementary that ownership is an essential element of conversion." Pl.'s Mem. [41] at 5 (quoting *Helveston v. Lum Props. Ltd.*, 2 So. 3d 783, 789 (Miss. Ct. App. 2009) (quoting *Cmty. Bank v. Courtney*, 884 So. 2d 767, 772–73 (Miss. 2004))).

8

The Mississippi Supreme Court applied that rule in *Courtney*, holding: "Because Courtney did not own [the repossessed] items, and ownership is an essential element of conversion, the trial court erred in denying the Bank's j.n.o.v. as to those items." 884 So. 2d at 773.

CDI never acknowledges this binding authority—even in reply. It relies instead on out-of-state cases, a 1917 dissenting opinion from the Mississippi Supreme Court, and a district-court case from Mississippi that predated *Courtney*. *See* CDI Reply [45] at 9. CDI will need to address *Courtney* before it is entitled to judgment.

CDI alternatively argues that Becker converted the money CDI spent on the Hydroblock. But CDI needs to explain why that would not be a "mere debt." *McGee*, 340 So. 3d at 330. And even if it could, whose money "ultimately" did CDI spend, its own or QuikTrip's? The Court is not suggesting that this claim cannot survive; it merely holds that CDI is not entitled to summary judgment. Additional briefing may be necessary at trial.

      E.      Remaining Claims

Defendants seek summary judgment on Becker's remaining claims, and CDI separately seeks summary judgment on some counterclaims against Becker. The Becker claims mostly relate to unpaid extra work and include (1) breach of contract against CDI, (2) breach of the duty of good faith and fair dealing against CDI, (3) quantum meruit and unjust enrichment against both Defendants, (4) punitive damages against CDI, and (5) statutory attorney's fees, penalties, and interest against CDI.

The remaining CDI counterclaims relate to Becker's work stoppage despite a duty-to-proceed clause that required it to "carry on the Work and maintain the Schedule of Work pending final resolution of a claim." Subcontract [36-3] § 11.4. Those claims include (1) breach of

contract, (2) breach of the duty of good faith and fair dealing, (3) punitive damages, and (4) attorneys' fees and costs.  There are other counterclaims CDI did not raise in its motion.

The claims and counterclaims are largely interrelated and turn on Becker's assertion that it was entitled to payment for the extra work it performed before walking off the job.  This is a common dispute in the construction industry that is well described in one of the leading treatises on construction law.  *See* CDI Reply [45] at 3 (citing 5 Bruner & O'Connor, *Construction Law* § 18:26).

CDI cites Bruner & O'Connor for its comment on duty-to-proceed clauses like § 11.4 of the subcontract: "[T]he contractor is expected to proceed with the work at its own expense until the dispute is resolved.  The contractor's failure to do so is a material breach."  Bruner & O'Connor, *Construction Law* § 18:26.  But Bruner & O'Connor doesn't stop there.  The next sentence states that such breaches may be justified when the owner improperly denies payment for change orders:

> The inherent problem in withholding payment on an undercapitalized contractor is that it can commence the "downward spiral" of contract nonperformance, and, if unjustified, can be viewed as a material breach of contract.  Slow-down in performance due to nonpayment begets more withholding.  Wrongful withholding of payment by the owner justifies contract termination by the contractor.
>
> . . .
>
> In the construction industry, the most frequent sources of payment disputes have arisen over entitlement to payment for changes and extras, and over failure of the paying party to properly administer the contractual change order process.  Refusal to acknowledge that work is extra and beyond the scope of the contract, and wrongful denial of compensation for changed work have led to many findings of material breach.  Negotiation in good faith of adequate change order compensation is an implied material obligation which, if breached, may justify termination for cause.

*Id.* So too here, Becker's entitlement to payment for the extra work presents a threshold question for its claim that CDI breached the subcontract by failing to pay and for whether Becker breached the subcontract by stopping work.[5]

Whether Becker was entitled to extra compensation starts with a few facts that have not been disputed. First, the project was behind, and CDI was pressing Becker to get it done. *See* Defs.' Reply [46] at 2. Second, the project encountered additional work or expenses beyond what the subcontract provided. P. Becker Aff. [42-1] ¶ 4. Third, Becker often did that work before CDI approved its change-order requests in writing. *Id.* ¶ 9.

CDI says that violated the subcontract's article 12 governing changes to the subcontract's scope. To start, § 12.1 states that "Subcontractor [Becker] shall perform any and all changes . . . when specifically ordered to do so in writing by CDI." Subcontract [36-3] at 14. That provision also states that Becker must provide within 14 days of those orders its estimate of costs including details and documentation. *Id.* Section 12.2.2 then stresses that CDI would make no payments above the subcontracted amount "unless specifically authorized, in writing, and approved by the Project Manager before the extra work is done."

"Generally, a contractor who proceeds with work without procuring a written change order proceeds at his peril." *City of Mound Bayou v. Collins*, 499 So. 2d 1354, 1358 (Miss. 1986). But as Becker points out, Mississippi law allows a contractor to recover for work outside

---

[5] Not every claim Becker makes turns on this analysis. For example, the job included additional work for damaged clean outs, but the parties dispute who completed that work. Both sides support their position with sworn testimony. *See* P. Becker Aff. [42-1] ¶ 8; King Dep. [38-11] at 151. Becker's affidavit is competent on this point, and the Court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005) (citation omitted). Given the extent to which the issues interrelate, the Court will not go through each disputed expense, but the clean-out dispute shows a claim for which a jury question exists.

a change order "if the extra work was 'orally ordered, requested, directed, authorized or consented [to] by the owner or his duly authorized agent.'" *Tupelo Redev. Agency v. Gray Corp.*, 972 So. 2d 495, 507 (Miss. 2007) (quoting *Collins*, 499 So. 2d at 1358).

That's true even with contracts like this one that require written approval. Any "writing requirement contained in the contract could itself be waived by the subsequent conduct of the parties." *Id*. (quoting *Canizaro v. Mobile Commc'ns Corp.*, 655 So. 2d 25, 29 (Miss. 1995)).

> Among the acts or conduct amounting to waiver are the owner's knowledge of, agreement to, or acquiescence in such extra work, a course of dealing which repeatedly disregards such stipulation, and a promise to pay for extra work, orally requested by the owner and performed in reliance on that promise.

*Eastline Corp. v. Marion Apts., Ltd.*, 524 So. 2d 582, 584 (Miss. 1988).

"[A] persistent pattern of conduct" can amount to waiver of the change-order requirement, which presents "a proper jury question" that "depended upon the facts." *Gray Corp.*, 972 So. 2d at 507. In *Eastline*, for example, the contractor was under pressure to finish the job and performed work before written approval. 524 So. 2d at 584. But its vice president maintained that when he requested authorization for that work, the owner told him: "Get the project done. Get it done. We'll take care of it later." *Id*. The trial court refused to admit evidence that the owner (Marion) waived the contract's written-approval provision, but the Mississippi Supreme Court reversed and remanded for a full trial:

> The evidence appears to support that Eastline acted in good faith when it proceeded with additional work without obtaining the necessary change orders; that Marion had knowledge of Eastline's performance of additional work; that Marion promised to pay for the additional work and Eastline obtained this assurance before proceeding; and that Marion's acquiescence in the additional work is evidenced by its agent's signature on the certificate of substantial completion.

*Id.* at 585.

Much like in *Eastline*, Becker claims CDI "failed to issue written change orders even though they expected Becker to complete the work." P. Becker Aff. [42-1] ¶ 5. And "CDI would often instruct Becker to do the additional work in the absence of a written change order and give [Peter Becker] verbal assurances that Becker would be compensated for such Additional Work." *Id.* ¶ 6. Becker then provides examples. *See id.* ¶¶ 7–10. He says CDI knew the work it ordered was critical and was proceeding without written approval. *See, e.g.*, *id.* ¶ 9. Becker has created a fact question whether Defendants waived the writing requirement and should have paid for the extra work.[6]

As noted, the other claims cascade from this one. For example, Becker may not have breached the subcontract by walking off the job if CDI's failure to pay was unjustified. *See* Bruner & O'Connor, *Construction Law* § 18:26. And that open question leaves a fact issue whether either party should prevail on its bad-faith claims. *Id.*; *see also Cenac v. Murry*, 609 So. 2d 1257, 1272 (Miss. 1992) (addressing bad-faith claims) (citing Restatement (Second) of Contracts § 205 (1979)). So too, the retainage issue—as briefed—seems related in part to the validity of Becker's lien. *See* Defs.' Mem. [39] at 14–15. Thus, this fact question permeates the remaining claims.

---

[6] CDI says "self-serving affidavits [like Peter Becker's], *without more*, will not defeat a motion for summary judgment." Defs.' Reply [46] at 6 (emphasis added) (quoting *Williams v. Vanderbilt Mortg. & Fin., Inc.*, No. 3:11-CV-613-DPJ-FKB, 2013 WL 5965689, at *4 (S.D. Miss. Nov. 8, 2013)). "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone." *C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (citation omitted). "Instead, an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *Id.* Becker's affidavit on these issues is not merely "conclusory and self-serving." *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005). He has personal knowledge about what CDI told him and about the work being done, and he includes examples.

The Court recognizes that some claims may ultimately lack merit. But with issues destined for trial—and given the intermingled facts and legal theories—"the better course would be to proceed to a full trial." *Firman*, 684 F.3d at 538. If a party fails to meet its burden at trial, then the matter can be revisited on directed verdict. For example, it does appear that Mississippi law bars Becker from recovering under a quasi-contract theory like quantum meruit or unjust enrichment when an express contract exists covering the same claims. *Watkins Dev., LLC v. Jackson Redev. Auth.*, 283 So. 3d 170, 178 (Miss. 2019). But because that's only an alternative legal theory based on the same facts as Becker's claim for breach of contract, Defendants suffer no prejudice by allowing the claim to remain in the suit for now.[7]

IV.   Conclusion

The Court has considered all arguments presented. Any not expressly addressed here would not affect the outcome. The Court grants summary judgment for CDI [38] on Becker's conversion and misrepresentation claims. Otherwise, the Court denies Defendants' motion for summary judgment [38] and CDI's motion for summary judgment on its counterclaims [36]. The parties are instructed to contact the Courtroom Deputy to set the case for pretrial conference and trial.

**SO ORDERED AND ADJUDGED** this the 7th day of March, 2025.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE

---

[7] It seems the parties were somewhat unsure about the specific costs that are disputed. For instance, CDI's opening brief [39] assumes Becker was disputing certain expenses. But Becker ignored most of those and listed others in its response. *See* Pl.'s Mem. [42] at 7. Becker's response may now frame the issues, but the parties should identify the specific disputes in the proposed pretrial order.